UNITED STATES *v.* J. L. HUDSON CO. (No. 3919) [1]

United States Court of Customs and Patent Appeals, February 17, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument December 5 1935, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND. HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding merchandise, described by the collector at the port of Detroit as "Fur rugs—lined", dutiable as floor coverings, not specially provided for, at 40 per centum ad valorem under paragraph 1021 of the Tariff Act of 1930, as claimed by the importer, rather than dutiable at 50 per centum ad valorem as articles in chief value of fur, under paragraph 1519 (e) of that act, as assessed by the collector.

The paragraphs in question read as follows:

PAR. 1021. Common China, Japan, and India straw matting, and floor coverings made therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for, 40 per centum ad valorem.

PAR. 1519. (e) Articles, wholly or partly manufactured (including fur collars, fur cuffs, and fur trimmings), wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

---

[1] T. D. 48177.

It appears from the record that the involved articles range in size from 24 x 50 inches to 28 x 66 inches.

The only witness who testified in the case was the examiner of merchandise at the port of Detroit. He stated that the involved articles "were furs of antelopes and Siberian goats; and the backs of them had cloth sewed on them." When asked how they were used, he said:

They are used as rugs, principally on the floor.

Q. As floor covering?—A. Yes, sir.

He further stated that they were in chief value of fur.

No samples were introduced in evidence.

In its decision, the trial court, after stating the issues and the evidence in the case, said:

It appears, therefore, that although the merchandise is composed of articles in chief value of fur, its chief use is as floor coverings, and we believe that the well-settled rule that a tariff designation by use takes precedence even over an eo nomine designation applies here. The contention of the importer finds added support in the holding of the Second Division of this court in Kaplan v. United States, T. D. 45272, which involved an issue analogous to the one here presented.

The claim in the protest for duty at the rate of 40 percent under paragraph 1021 is sustained, the decision of the collector being modified to that extent.

It is contended by counsel for the Government that the Congress did not intend to include floor coverings made in chief value of fur in paragraph 1021, supra; that the involved articles are not ejusdem generis with the articles provided for in that paragraph; and that, therefore, the merchandise is dutiable as assessed by the collector. In support of its contention, counsel relies particularly upon the decisions in the cases of Gimbel Bros., Inc. v. United States, 22 C. C. P. A. (Customs) 146, T. D. 47111; Magone v. American Trading Co., 57 Fed. 394.

In the case of Gimbel Bros., Inc. v. United States, supra, this court reversed the decision of the trial court, and held that so-called sponge-rubber mats, composed wholly or in chief value of rubber, were not dutiable as floor coverings under paragraph 1022 of the Tariff Act of 1922, but were dutiable as manufactures in chief value of india rubber under paragraph 1439 of that act. It there appeared that the "sponge rubber" mats were used as floor coverings in bathrooms, and that when not in use they were "hung over the bathtub or put away, and * * * not left upon the floor." In disposing of the issues in that case, we said:

It seems obvious that the use of the article here involved differs from the customary use of such articles as the paragraph specifically names, such as floor coverings, made from straw matting, and carpets, carpeting, etc., made wholly of cotton, flax, hemp, or jute, or a mixture thereof. The sample (Exhibit 1) before us is 21½ inches long by 13½ inches wide and about one-fourth inch in thickness. It appears to be wholly of rubber treated in a manner which gives its upper surface a spongy appearance. The stipulation states that the use for which it is designed is on the floors of bathrooms. It is a bathing accessory and, so far as shown, has no other use.

The stipulation recites that the articles first appeared in trade and commerce in the United States in 1925. It is not, therefore, an article which Congress is presumed to have had specifically in contemplation at the time of the passage of the Tariff Act of 1922.

In view of the fact that the article differs so greatly in material, texture, and use from the articles admittedly involved in paragraph 1022, and, in view of the statements of the stipulation, we feel constrained to differ with the trial court as to its proper classification.

In the case of *Magone* v. *American Trading Co.*, *supra*, the Circuit Court of Appeals, Second Circuit, held that—

Screens * * * composed of paper, as their component material of chief value, and of wood and metal, which were used on the floors of dwelling houses or other places, to intercept heat, light, or moving air, or to conceal portions of rooms or objects, and which were then known in trade and commerce of this country as "paper screens,"

were not *ejusdem generis* with the articles provided for in paragraph 378 of the tariff act of 1883, and, accordingly, were not dutiable under that paragraph, but were dutiable at 15 per centum ad valorem as manufactures of paper under paragraph 388 of that act. Paragraph 378 read:

Carpets and carpetings of wool, flax, or cotton, or parts of either or other material, not otherwise herein specified, 40 per centum ad valorem; and mats, rugs, screens, covers, hassocks, bedsides, and other portions of carpets or carpetings, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description; and the duty on all other mats not exclusively of vegetable material, screens, hassocks, and rugs, shall be forty per centum ad valorem.

It was contended by counsel for appellee in oral argument, no brief having been filed by him, that the provision for all floor coverings not specially provided for, contained in paragraph 1021, *supra*, includes all floor coverings not otherwise specially provided for in that act; that the statute is unambiguous; and that, therefore, the court should not turn to the legislative history of the paragraphs in question, nor to rules of statutory construction for the purpose of ascertaining the legislative intent.

We are unable to agree with counsel for appellee in either of his contentions.

Paragraph 1022 of the Tariff Act of 1922 is identical with paragraph 1021, *supra*, except that it included carpeting, etc., made of cotton.

In the Summary of Tariff Information, 1929, Vol. 2, page 1662, the Tariff Commission reported to the Committee on Ways and Means of the House of Representatives, in connection with the Tariff Act of 1922, that paragraph 1022 of that act—

relates to floor coverings made of vegetable fibers or vegetable substances. Imports under this paragraph consist principally of floor coverings composed of rice-straw, matting rushes, cotton, and jute.

With reference to paragraph 1420 of that act, the Tariff Commission at page 1981, Vol. 2 of that report, said:

Most furs are used for wearing apparel such as neck pieces, coats, hats, and garment trimmings. Furs are also used for mats, rugs, and robes.

Paragraph 1021, *supra*, is contained in Schedule 10, entitled "FLAX, HEMP, JUTE, AND MANUFACTURES OF", and particularly provides for matting, floor coverings, mats, and rugs composed in chief value of vegetable fiber or a mixture thereof.

We are of opinion, therefore, that the general provisions for all other floor coverings, not specially provided for, contained in that paragraph were intended by the Congress to be restricted to articles *ejusdem generis* to those thereinbefore enumerated and described, and that it was intended that articles such as those here involved should be dutiable under the provisions of paragraph 1519 (e), *supra*.

For the reasons stated, the judgment is *reversed*.